ELECTRONICALLY FILED
Arkansas Supreme Court
Stacey Pectol, Clerk of the Courts
2017-Jan-22  22:23:59
D-16-301
222 Pages

## IN THE SUPREME COURT OF ARKANSAS

STARK LIGON,                                                    PETITIONER
As Executive Director of the Supreme Court
Committee on Professional Conduct

v.                              No. D-16-301

TERESA L. BLOODMAN,                                      RESPONDENT
Attorney at Law, ABN 2005055

### RESPONDENT'S ANSWER TO ORIGINAL PETITION FOR DISBARMENT AND REQUEST FOR PRELIMINARY HEARING

Comes now Respondent, Teresa Bloodman, by and through her attorney, Austin Porter Jr., and avers and alleges as follows:

### 1. RESPONDENT RAISES THE DEFENSE OF LACK OF JURISDICTION

This Court lacks jurisdiction.  Petitioner failed to state grounds upon which relief could be granted, defective service and deprivation of due process.

2. That Respondent

3. That pursuant to Ark. R. Civ. P. 12(d), Respondent requests an immediate preliminary hearing.

### I.    INTRODUCTION

1. This Court lacks jurisdiction.  That the Respondent has challenged

this Court's jurisdiction to hear this matter based on the due process violation,

Procedures that are in conflict ad override the U.S. Constitution and Arkansas

Constitution, and the March 22, 2106 defective Order of Interim Suspension.

2. Respondent is without sufficient knowledge and information to admit

or deny the allegation in paragraph 2, as such the same is denied.

3. Respondent admits she.

4. Respondent admits she practiced law statewide in Arkansas, not

limited to Pulaski County only.  Her mailing address has always been P.O. Box

13641, Maumelle, AR.

5. Respondent is without sufficient knowledge and information to admit

or deny the allegation in paragraph 5, as such the same is denied.  Specifically,

Respondent was denied her due process rights by Ligon and the Committee.  She

was not afforded a pre-suspension hearing.  Further, Respondent was not allowed

to attend or participate in the "closed" meeting allegedly held by Ligon and the

Committee.

On March 21, 2016, the Committee on Professional Conduct (the

Committee) deprived Bloodman of her Fourteenth Amendment right to due

process when it summarily suspended her from the practice of law without

affording her a pre-suspension hearing.  Prior to the hearing, Bloodman was not

provided specific written notice of the allegations of attorney misconduct, an

explanation of the Executive Director's evidence so that she could provide a meaningful response, an opportunity to correct the overwhelming number of factual mistakes in the Executive Director's investigation, or the opportunity to address the type of discipline being considered by the Committee. In fact, neither Bloodman, nor her attorney, was allowed to attend the hearing.

Bloodman asserts that given the large number of factual disputes in each of the nine complaints filed by the Executive Director, a pre-suspension hearing was necessary in order for her to have the opportunity to explain and refute any conclusions the Committee reached which caused her interim suspension. Indeed, the purpose of a pre-suspension hearing is to provide the attorney with an opportunity to present her side of the story before the Committee renders a decision on discipline. By not providing Bloodman with a pre-suspension hearing, the Committee could not have made a reliable determination of whether there were reasonable grounds to believe that the allegations of misconduct filed against Bloodman were appropriate.

Another example of unfairness is that the Committee failed to provide any factual findings of fact for any of the allegations in the nine complaints. That is, the interim order of suspension was completely devoid of any specific acts of misconduct or any particular violations of the rules of ethics. Additionally, the Order to initiate disbarment proceedings was completely devoid of any specific

acts of misconduct or any particular violations of the rules of ethics. These glaring omissions are certainly emblematic of the gross inequity that has plagued this process from the beginning. Also, Ligon prepared the order of interim suspension and the order to initiate disbarment proceedings. This, of course, raises questions about the overall objectivity of the Committee as well as the fairness of the proceedings.

Finally, the topic of unfairness cannot be broached without discussing the enormous discretion that this Court has given to the Executive Director. Many of the allegations of misconduct in the nine complaints emanated from Petitioner's legal representation of clients in cases that took place several years ago. However, without having to adhere to a statute of limitations, the Executive Director has been able to bring forth claims of wrongdoing in those dated matters. Bloodman asserts that it is unjust for the Executive Director to be able to table complaints at his sole discretion as it could cause an abuse of process.

## II.    Respondent's Response to CPC No. 2014-053 (Bloodman IOLTA Trust Account) filed 10-23-14

### A. Contested factual allegations

1-37. Responding to paragraphs 1-37 of the Complaint, Respondent contests and denies generally and specifically each and every allegation contained in

4

paragraphs 1-37 in the Complaint that is not admitted.  Respondent contests and denies each and every allegation of rule violations.

1.  Responding to paragraph 1 of the Complaint, Respondent admits that she held an IOLTA account at Arvest bank..

2.  Responding to paragraph 2 of the Complaint, Respondent is without sufficient information to admit or deny the allegations related to an agreement with Arvest bank.  Throughout the review of the alleged complaints, the consideration and crafting of a response, the Respondent has requested certain information be provided in order that she might effectively, thoroughly and intelligently respond to the allegations contained within the compliant. It is verily believed that the information sought would also be helpful in assessing whether the Executive Director's motives were permissible and legitimate.

3.  Responding to paragraph 3 of the Complaint, Respondent is without sufficient information to admit or deny the allegations related to any report generated by Arvest bank and mailed to OPC.  That the Respondent affirmatively states that while on the face of the complaint, allegations emerge concerning the operation of the IOLTA account, the most important question is whether the IOLTA account has been mismanaged or abused in such a way to indicate a pattern of total disregard for the rules governing the use of IOLTA accounts.

4.     Responding to paragraph 4 of the Complaint, Respondent is without

5

sufficient information to admit or deny the allegations related to any report generated by Arvest bank and mailed to OPC. Respondent does not have any information that a check was dishonored. Because of the obstructive manner and disruptive mode that this investigation was conducted, the entire proceeding has taken on more than the appearance of a quasi criminal proceeding, which requires that careful attention and focus be given to whether or not the traditional safeguards of constitutional protections are observed.

5. Responding to paragraph 5 of the Complaint, Respondent is without sufficient information to admit or deny the allegations related to any report generated by Arvest bank and mailed to OPC. Respondent asserts that the oppressive, and accusatory method employed by the Executive Director is antithetical to the purpose and scope not only of the rule governing the regulation of practice but also to his role as the Executive Director which should raise concern about the very office that he holds and the structure under which he operates.

6. Responding to paragraph 6 of the Complaint, Respondent is without sufficient information to admit or deny the allegations related to any report generated by Arvest bank and mailed to OPC. Respondent affirmatively states that the Executive Director, while leading one to believe that the allegations are mind boggling, does not at any time argue that payee of any check which is the subject

6

of this matter has been injured, irreparably harmed or damaged by or through the acts of the Respondent, her agents or assigns.

7.  Responding to paragraph 7 of the Complaint, Respondent is without sufficient information to admit or deny the allegations related to any report generated by Arvest bank and mailed to OPC.  Respondent affirmatively states that although the Executive Director purports to investigate the allegations giving rise to the complaint filed herein, he has failed to produce for copying and inspection copies of any documents evidencing that the Respondent has damaged or otherwise irreparably harmed any third parties.

8.  Responding to paragraph 8 of the Complaint, Respondent is without sufficient information to admit or deny the allegations related to any report generated by Arvest bank and mailed to OPC.  Respondent affirmatively states that the current Rules do not provide for recourse when actions of the Executive Director are considered improper, inappropriate or otherwise motivated by ill will or other impermissible criteria. Therefore the rules do not provide for equal protection against abuses by the Executive Director as it relates to his investigation or behavior toward a particular respondent and in this case, the Respondent.

9.  Responding to paragraph 9 of the Complaint, Respondent is without sufficient information to admit or deny the allegations related to any report generated by Arvest bank and mailed to OPC.  Respondent affirmatively states that

7

the manner in which Ligon has sought to investigate this matter is calculated to harass, pester, annoy, infuriate and embarrass her without good reason or cause and in bad faith. The Executive Director has embarked on a journey designed deliberately to impact upon the reputation of the respondent, both professionally and personally through the taking of photographs, "tailing of employees and the Respondent, accessing answer phone information, leaving messages otherwise privileged with public employees and the like, forwarding of e mails concerning the substance of investigation otherwise private and not public, all calculated to impact on the daily life of the Respondent and her health and welfare and safety.

10. Responding to paragraph 10 of the Complaint, Respondent is without sufficient information to admit or deny the allegations related to any report generated by Arvest bank and mailed to OPC. Respondent denies that the Iolta account was used to process a personal appeal when payment of costs was made since the Respondent was a party to a lawsuit and that the funds were designated for purposes of accomplishing the appeal.

11. Responding to paragraph 10 of the Complaint, Respondent is without sufficient information to admit or deny the allegations of information held in OPC files. Respondent affirmatively states that the actions of the Executive Director have been taken in bad faith with one of the express purposes being to make it

8

unduly burdensome for the Respondent to respond to the broad brushed allegations made therein.

12. Responding to paragraph 12 of the Complaint, Respondent is without sufficient information to admit or deny the allegations Respondent asserts that while the Executive Director relies upon his reading of the rules to require that the Respondent provide certain information, he is not heard to complain that the same information could be ascertained by the OPC with the use of a Subpoena as permitted under the rules.

13.    Responding to paragraph 13 of the Complaint, Respondent is without sufficient information to admit or deny the allegations Respondent while acknowledging that while some changes are to be made to avoid duplication of irregularities, none of the consequences revealed herein have resulted in irreparable harm or damage to any account holder or payee.

14.    Responding to paragraph 14 of the Complaint, Respondent is without sufficient information to admit or deny the allegations Respondent while acknowledging that while some changes are to be made to avoid duplication of irregularities, none of the consequences revealed herein have resulted in irreparable harm or damage to any account holder or payee.

15.  Responding to paragraph 15 of the Complaint, Respondent is without

sufficient information to admit or deny the allegations. Respondent while acknowledging that while some changes are to be made to avoid duplication of irregularities, none of the consequences revealed herein have resulted in irreparable harm or damage to any account holder or payee.

16. Responding to paragraph 16 of the Complaint, Respondent is without sufficient information to admit or deny the allegations .

17.Responding to paragraphs 17-26 of the Complaint, Respondent responded to all letters from OPC. The request for 30 days extension to respond was granted. Respondent specifically requested the extension in order to get pertinent and relevant information from Ligon and others in order to respond. Ligon failed and refused to provide the same. The executive Director has personally undertaken to research and investigate each and every allegation against the Respondent in such tactics, taking photographs of employees and of the residence of the Respondent. This is consistent with the manner in which he has investigated the complaints of other African Americans in that he has provided photographs of social media items with sarcastic remarks concerning some imaginary link to the practice of law when none in fact exists.

18. Responding to paragraphs 27 of the Complaint, Respondent is without sufficient information to respond. Further, the paragraph is not relevant.

19. Responding to paragraphs 28 of the Complaint, Respondent is without

sufficient information to respond . Further, the paragraph is not relevant.

20.  Responding to paragraphs 29 of the Complaint, Respondent is without sufficient information to respond.  Respondent asserts that neither she nor her office, nor any answering service has ever provided him with any email document reflecting telephone messages from him that were directed to Respondent.  During that same time period, Respondent's email had been illegally entered and hacked and a report was made of the same.

21.  Responding to paragraph 30 of the Complaint, Respondent is without sufficient information to admit or deny the allegations.

22.  Responding to paragraph 31of the Complaint, Respondent is without sufficient information to admit or deny the allegations.  That matter was opened and filed by an attorney.

23.  Responding to paragraphs 32-36 of the Complaint, Respondent is without sufficient information to respond admit or deny the allegations.  Further, the paragraphs are not relevant to this matter.

24. Responding to paragraph 37 of the Complaint, Respondent objects to Ligon being allowed to amend and supplement this Complaint.  He has held this Complaint dormant for more than two (2) years.

25.  Respondent further asserts that some of the tactics employed by the

executive Director are the equivalent of stalking and an attempt to disrupt the personal and professional life of the undersigned without good reason or cause as he has done in the past with other African Americans, some of whom are now deceased having been improperly deprived of the right to practice law, stemming from the unusual oppressive tactics engaged in by the Executive Director all designed to seek out and destroy.

26. Respondent asserts that the behavior of Ligon, a Caucasian male, is crafted, molded and designed to intimidate African Americans in general and black females in particular, in many other ways that are impermissible and grounded in chauvinistic attitudes. From time to time, in an effort to chill the first amendment rights of the Respondent, and the right to liberty, and to associate with others, the Executive Director has made general inquires suggesting that the undersigned was or might be engaged in some illegal or other improper activities.

27. Respondent affirmatively asserts that the obsession with the Respondent is known throughout his office apparently as in each case where a potential complaint surfaces against the Respondent, the case is assigned to the Executive Director. Under normal circumstances, this might not be a legitimate question to be investigated, but given the described conduct attributable to the Executive Director, an investigation is appropriate to determine whether abuses have occurred or are occurring.

12

28. Respondent denies each and every other allegation contained within the complaint and not specifically admitted, herein.

## B. Respondent Denies All Counts of Arkansas Rules violation charges

Count 1.     Respondent did not violate Rule 1.15 (a)(1).  The conduct of Respondent does not violate Rule 1.15(a)(1) and that she did not pay personal obligation or expenses from her IOLTA account with checks re a filing fee for a legal matter that she was handling and that these funds were properly paid from the Iolta account and therefore were not impermissibly commingled with other trust.

Count 2.     Respondent did not violate Rule 1.15 (a)(1).  The conduct of Respondent does not violate Rule 1.15(a)(4) and that there does not exist adequate or sufficient proof that Ms. Bloodman is not properly maintaining her IOLTA client Trust account.  While improvements in the maintaining of her account and safeguards were put in place, there is no evidence to indicate that any intentional or reckless conduct occurred as it relates to the maintaining of the client Iolta Trust account.  A check was not dishonored for insufficient funds in Respondents IOLTA account.

Count 3.     Respondent did not violate Rule 1.15 (a)(4).  A check was not dishonored for insufficient funds by a bank.  Respondent provided documentation of bank error to Ligon.

Count 4.    Respondent did not violate Rule 1.15(b)(3). That the conduct

of Respondent does not violate Rule 1.15(b)(3) and that there does not exist

adequate or sufficient proof that Ms. Bloodman otherwise violated this rule.

Count 5.    Respondent did not violate Rule 1.15 (a)(1).  That the conduct

of Respondent does not violate Rule 1.15 (a)(1) and that there does not exist

adequate or sufficient proof that Ms. Bloodman otherwise violated this rule.  A

check was not dishonored for insufficient funds by a bank.

Count 6.    Respondent did not violate Rule 8.1(b). That the conduct of

Respondent does not violate Rule 8.1(b) in that the demands for information

regarding may not have been made in good faith as well as volatile of due process.

Under any circumstances, Ms. Bloodman made legitimate requests for information

to assist in responding to the demand of Ligon and he has yet to respond which

raises legitimate question of whether Bloodman has been denied equal protection

and due process under the law.  Further, Respondent did not receive notice of this

alleged Rule violation prior to the filing of the petition for disbarment.

Additionally, Respondent did respond to all of the letters received from Ligon

regarding this matter.

Count 7.    Respondent did not violate Rule 8.1(b). That the conduct of

Respondent does not violate Rule 8.1(b) in that the demands for information

regarding may not have been made in good faith as well as volatile of due process.

14

Under any circumstances, Ms. Bloodman made legitimate requests for information to assist in responding to the demand of Ligon and he has yet to respond which raises legitimate question of whether Bloodman has been denied equal protection and due process under the law.  Further, Respondent did not receive notice of this alleged Rule violation prior to the filing of the petition for disbarment. Additionally, Respondent did respond to all of the letters received from Ligon regarding this matter.

Count 8.     Respondent did not violate Rule 8.1(b). That the conduct of Respondent does not violate Rule 8.1(b) in that the demands for information regarding may not have been made in good faith as well as volatile of due process. Under any circumstances, Ms. Bloodman made legitimate requests for information to assist in responding to the demand of Ligon and he has yet to respond which raises legitimate question of whether Bloodman has been denied equal protection and due process under the law.  Further, Respondent did not receive notice of this alleged Rule violation prior to the filing of the petition for disbarment. Additionally, Respondent did respond to all of the letters received from Ligon regarding this matter.

Count 9.     Respondent did not violate Rule 8.1(b). That the conduct of Respondent does not violate Rule 8.1(b) in that the demands for information regarding may not have been made in good faith as well as volatile of due process.

15

Under any circumstances, Ms. Bloodman made legitimate requests for information to assist in responding to the demand of Ligon and he has yet to respond which raises legitimate question of whether Bloodman has been denied equal protection and due process under the law. Further, Respondent did not receive notice of this alleged Rule violation prior to the filing of the petition for disbarment. Additionally, Respondent did respond to all of the letters received from Ligon regarding this matter.

Count 10.    Respondent did not violate Rule 8.1(b). That the conduct of Respondent does not violate Rule 8.1(b) in that the demands for information regarding may not have been made in good faith as well as volatile of due process. Under any circumstances, Ms. Bloodman made legitimate requests for information to assist in responding to the demand of Ligon and he has yet to respond which raises legitimate question of whether Bloodman has been denied equal protection and due process under the law. Further, Respondent did not receive notice of this alleged Rule violation prior to the filing of the petition for disbarment. Additionally, Respondent did respond to all of the letters received from Ligon regarding this matter.

Count 11.    Respondent did not violate Rule 8.1(b). That the conduct of Respondent does not violate Rule 8.1(b) in that the demands for information regarding may not have been made in good faith as well as volatile of due process.

16

Under any circumstances, Ms. Bloodman made legitimate requests for information to assist in responding to the demand of Ligon and he has yet to respond which raises legitimate question of whether Bloodman has been denied equal protection and due process under the law.  Further, Respondent did not receive notice of this alleged Rule violation prior to the filing of the petition for disbarment. Additionally, Respondent did respond to all of the letters received from Ligon regarding this matter.

Count 12.    Respondent did not violate Rule 8.4(a). That the conduct of Respondent does not violate Rule 8.4(a) in that Respondent did respond to all of the letters received from Ligon regarding this matter.  Ligon's demands for information regarding this matter may not have been made in good faith as well as volatile of due process. Under any circumstances, Ms. Bloodman made legitimate requests for information to assist in responding to the demand of Ligon and he has yet to respond which raises legitimate question of whether Bloodman has been denied equal protection and due process under the law.

Count 13.    Respondent did not violate Rule 8.4 (c ).  That the conduct of Respondent does not violate Rule 8.4 (c) and that there does not exists nay evidence to support the conclusion that Respondent engaged in conduct involving dishonesty, deceit or misrepresentation regarding her IOLTA account.

17

Count 14.    Respondent did not violate Rule 8.4 (c ).  That the conduct of
Respondent does not violate Rule 8.4 (c) and that there does not exists nay
evidence to support the conclusion that Respondent engaged in conduct involving
dishonesty, deceit or misrepresentation regarding her IOLTA accountCount 13.

Count 15.    Respondent did not violate Rule 8.4 (c ).  That the conduct of
Respondent does not violate Rule 8.4 (c) and that there does not exists nay
evidence to support the conclusion that Respondent engaged in conduct involving
dishonesty, deceit or misrepresentation regarding her IOLTA account

That a performance evaluation of the office of Executive Director should be
evaluated and investigated concerning the allegations that have been made during
the course of the complaint and other complaints filed herein and that a report
should be made forthwith with appropriate findings and recommendations
concerning the conduct of the Executive Director.

### III.    Respondent' Response to CPC No. 2014-067 (Edward Liggins appeal) filed 12-30-14

### A. Contested factual allegations

Respondent affirmatively states and purports to make it clear that the alleged
complaint filed herein which gives rise to this response is neither the product of a
referral from the Arkansas Appellate Courts and likewise is unsupported by an
accompanying affidavit of any aggrieved party and therefore is not in compliance

with the Procedures of the Arkansas Supreme Court Rules Regulating the

Professional Conduct of Attorneys at Law and the Arkansas Rules of Professional

Conduct. This complaint is a creature of the Executive Director filled with

animosity and disdain toward the respondent, which should otherwise lead to and

be the basis for his disqualification from any participation in these proceedings.

Further that given the nature of the complaint filed herein, the performance of the

Executive Director should be reviewed to determine his fitness to continue to serve

as the person responsible for overseeing the regulation of the conduct of Attorneys

licensed in the State of Arkansas.

That the filing of this complaint is arbitrary, capricious, without merit,

discriminatory, unfair, and a violation of the Respondent's right to equal

protection and due process of law as guaranteed under both the Arkansas and

United States Constitution and the laws emanating there under and there from.

That the complaint fails to state sufficient grounds and basis upon which

relief can be granted under the Rules Governing the Professional Conduct of

Attorneys and should therefore be dismissed.

That the complaint filed herein is defective in that service of the alleged

complaint was not accomplished in accordance with nor pursuant to Section 9 of

the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of

Attorney at law and affirmatively states Ligon through contact with a trial court effectuated services in a surreptitious manner by requiring the Respondent to appear in court during a hearing for purposes of accomplishing service. Based upon information and belief, it is believed that the trial court was aware of the complaint and was complicit in the service in the manner ultimately obtained by the Executive director on January 8, 2015.

The Respondent further affirmatively states that prior to the filing of this complaint, Ligon contacted Edward Liggins, Sr., requesting and continuously harassing that he file a Complaint against Respondent. Mr. Liggins, Sr., refused and signed an Affidavit of Ligon's continued harassing communications. Further, Mr. Liggins advised that Ligon communicated his dislike and disdain for Bloodman, communicated that he was going to prosecute Bloodman, communicated that he was going to take Bloodman's law license, communicated he had existing complaints filed against Bloodman and communicated specific allegations contained in complaints. The communication and behavior of Ligon violated Section 6(A)(1)(2). Confidentiality/Records. Ligon's actions should be investigated and sanctions should be issued. Moreover, because of Ligon's actions, the Complaint should be dismissed.

Respondent affirmatively states that the Appellant Edward Liggins , prior to the commencement of the complaint and this action, requested that the Respondent remain as counsel on the appeal of his conviction.

1. That Respondent admits paragraphs 1, through 7 relating to the charges and the underlying conviction of Liggins.

2. Responding to paragraph 8 of the Complaint, Respondent affirmatively states that on November 8, 2010, Liggins was permitted to proceed in Forma Pauperis with directions that the State pays for the appeal transcript, including the record and other proceeding.  Respondent affirmatively states that at all times herein relating to this matter that the undersigned was appointed to represent the Liggins on appeal as an indigent and therefore admits paragraph 8 of the alleged complaint.

3. Responding to paragraph 9 of the Complaint, Respondent affirmatively states that the prepared incomplete and partial record was filed on appeal with the appellate Clerk. That the record was incomplete and it is undisputed that the partial incomplete record was not the fault of the undersigned.

4. Responding to paragraph 10 of the Complaint, That the Executive director has intentionally compiled a record, characterized as a complaint in such a voluminous manner which he has filed calculated to give the appearance of

21

significant issues bearing on the competency of the Respondent to handle appeals and other criminal matters.

5. Responding to paragraphs 11-14 of the Complaint, The Respondent affirmatively states that motions for extension of time were prepared in this matter and filed in accordance with the rules governing appeals in the State of Arkansas, some of which these were granted.

6. Responding to paragraph 15 of the Complaint, Respondent admits that from time to time in order to prepare the abstract and brief, to be considered by the Court of Appeals, that the record on appeal was necessary and therefore any references to such surplusage contained within the complaint should be ignored as the only issue is whether this is a valid complaint within the jurisdiction of the Court to be considered.

7. Responding to paragraph 16 of the Complaint, Respondent admits a motion for extension to supplement was filed concomitantly with tendered brief due to incomplete record. The Respondent denies that imposition of any sanctions are appropriate.

8. Responding to paragraph 17 of the Complaint, Respondent affirmatively states that from time to time as persons are utilized in the preparation of abstracts, the person so employed from time to time incur practical problems which must be

22

addressed by the court such as incomplete records or missing exhibits, inter alia. In the preparation of the brief and abstract, such problems were incurred.

9. Responding to paragraph 18 of the Complaint, Respondent affirmatively states that that the allegations contained within paragraphs and supported by the record are not in dispute.

10. Responding to paragraphs 19-29 of the Complaint, Respondent affirmatively states that that the allegations contained within paragraphs and supported by the record are not in dispute.

11. Responding to paragraph 30 of the Complaint, Respondent admits that

$105.00 was paid by Liggins toward the balance owed for Post trial representation of Edward Liggins, Jr.; Post trial Petition for New Trial Rule 27only and had absolutely nothing to do with payment for appointed counsel and any representations to the contrary are misleading and false.

12. Responding to paragraph 31-47 of the Complaint, Respondent affirmatively states that that the allegations contained within paragraphs and supported by the record are not in dispute.

13. Responding to paragraph 48 of the Complaint, Respondent affirmatively states that on November 19, 2014 the Court of Appeals removed Bloodman as appellate counsel for Liggins, ordered a third rebriefing and appointed another attorney to proceed with the appeal and therefore admits paragraph 48 of the

23

alleged complaint.   Respondent affirmatively states that the opinion of the Court did not refer respondent to OPC for professional misconduct or for investigation.

14. Responding to paragraph 49 of the Complaint, Respondent does not have any information or knowledge regarding new counsel appointed or his requirements.

15. Responding to paragraph 50 of the Complaint, Respondent does not have any information or knowledge regarding payment of costs for the appeal.

16.   Respondent wishes to make it clear and apparent that even though she is now called upon to answer to these unfounded charges relating to the appeal of the Liggins' matter, she has yet to be paid for the work and expenses incurred in the handling of this matter, including research preparing, copying of motions and briefs, paying abstractor's fees and the like.  In addition to the preparation and completion of other matters related to completion of brief, the undersigned expended additional personal funds, while to date have not been reimbursed by the State or any other party to this litigation.

17. Responding to paragraph 51-56 of the Complaint, Respondent asserts that the allegations were not included in the complaint served on her and she was not given notice o opportunity to respond.  Further, they have no relevance to this complaint and are immaterial.  The purpose of Ligon's inclusion is to prejudice the Respondent.   Without waiving objection, Respondent generally and specifically

24

denies each and every allegation.  Respondent further, generally and specifically denies each and every allegation of Rule violations.  The same should be stricken.

18.  Responding to paragraph 57 of the Complaint, Respondent generally and specifically denies each and every allegation.  Respondent further, generally and specifically denies each and every allegation of Rule violations.

19.  Responding to paragraph 58 of the Complaint, Respondent generally and specifically denies each and every allegation.  Respondent further, generally and specifically denies each and every allegation of Rule violations.

20.  That the filing of this complaint is yet another instance of harassment and annoyance undertaken by the executive director to disrupt the practice and career of the Respondent.

21.  The Respondent asserts that by permitting the Executive Director to exercise unbridled authority and power designed to impact on the career of attorneys, particularly African Americans is to permit unscrupulous and discriminatory discretion by him to engage in witch hunts and fishing expeditions designed to destroy the career of the Respondent while salvaging those careers that he discriminately chooses.

22.  Respondent affirmatively states that references to other appeals and the